**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND AIRPORT CORPORATION, INC.** | : | |
| | : | |
| **v.** | : | **C.A. No. 07-300 S** |
| | : | |
| **GENERAL STAR INDEMNITY COMPANY** | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION TO ENLARGE THE TIME TO COMPLY WITH PRE-TRIAL ORDER**

On October 3, 2007, the Honorable William E. Smith entered a Pre-Trial Order in this case. On January 24, 2008, pursuant to the Defendant General Star Indemnity Company's unopposed Motion to Enlarge Time, the Court entered an Order enlarging various deadlines which directed the parties to close fact discovery by April 4, 2008 and established the date of April 18, 2008 as a deadline for the filing of dispositive motions. The court also directed the parties to submit Pre-Trial Memoranda on May 3, 2008 if no dispositive motions were filed with the court. Defendant has indicated that it intends to file a motion for summary judgment in this action, and the parties are in the early stages of producing an agreed statement of facts.

The Plaintiff now moves to enlarge the time to comply with the Pre-Trial Order as amended by the Court because of a pending meritorious Motion for Summary Judgment filed by the Plaintiff in the underlying case for which coverage is sought.

Extensive fact witness discovery in the Federal Court litigation has been accomplished in conjunction with the companion state court litigation. The underlying incident that led to the Federal Court declaratory judgment action centers on an accident in which a skydiver named Suzanne Costa was seriously injured when she overshot the landing zone, her parachute collapsed into the moving propeller of a nearby airplane, and she was pulled by her parachute

into the airplane propeller. During the course of the underlying state court litigation, the parties completed numerous depositions within the time permitted by the Court's Amended Pre-Trial Order, including the depositions of the plaintiff Suzanne Costa, the pilot and owner of the aircraft, several eye-witnesses, representatives of RIAC, and the leaseholder of the land where the skydiving accident occurred.

During discovery in the underlying case, RIAC learned that the plaintiff Suzanne Costa had knowingly executed a detailed waiver of liability for any and all injuries that could occur while she was engaged in skydiving, a copy of which is attached as Exhibit "A." Based on Ms. Costa's execution of the waiver, and the lack of any disputes of material fact, RIAC filed a Motion for Summary Judgment arguing that the execution of the waiver discharged it from any and all liability under the causes of action brought by Suzanne Costa in her underlying skydiving case. A true and correct copy of RIAC's Motion for Summary Judgment is attached hereto as Exhibit "B." As set forth in the attached Motion, RIAC believes that Rhode Island law clearly supports the entry of summary judgment in its favor and believes that the Motion is likely to be granted by the Superior Court.

A hearing on RIAC's Motion for Summary Judgment is scheduled to occur in the Superior Court of Rhode Island, Providence County, on June 3, 2008.

If RIAC's Motion for Summary Judgment in the underlying case is granted, then one aspect[1] of the relief sought by RIAC in the instant coverage action will be moot. Indeed, if Suzanne Costa's causes of action are dismissed against RIAC, then RIAC may not suffer any loss other than its counsel fees which are partially being provided by another indemnitor, Piedmont

[1] Indemnification will no longer be necessary. However, defense costs may still be an issue.

Hawthorne Aviation. Under that circumstance, the relief sought from General Star will be substantially altered.

Accordingly, in order to serve judicial economy and refrain from an unnecessary strain on the Court's time and resources, RIAC moves to enlarge the date on which to file dispositive motions until after a ruling on its Motion for Summary Judgment in the underlying state court case, from April 18, 2008 to August 18, 2008. Finally, RIAC moves to enlarge the date for the filing of any Pre-Trial Memoranda to thirty days after a decision on any dispositive motion, or if no dispositive motions are filed, to September 18, 2008.

Counsel for the Defendant has indicated that the Defendant will not oppose the motion.

PLAINTIFF
RHODE ISLAND AIRPORT CORPORATION

By Its Attorneys,

TILLINGHAST LICHT LLP

/s/Lori Caron Silveira
Lori Caron Silveira (#3576)
10 Weybosset Street
Providence, RI 02903-2818

BLANK ROME, LLP

/s/ David N. Zeehandelaar
By: David N. Zeehandelaar
*Admitted pro hac vice*
One Logan Square
Philadelphia, PA 19103-6998

*Counsel for Plaintiff Rhode Island Airport Corporation*

## CERTIFICATION

The undersigned hereby certifies that a true copy of the within document was filed electronically with the Court, and notices of electronic filing were sent to the following counsel of record on April 1, 2008:

Lori Caron Silveira, Esq.
Tillinghast Licht LLP
10 Weybosset Street
Providence, RI 02903-2818

Dennis Carley, Esq.
Roberts, Carroll, Feldstein & Peirce, Inc.
Ten Weybosset Street
Providence, RI 02903

/s/ Lev Kalman

# EXHIBIT A

06/16/2004 15:17 FAX 212 859 3830 USAU CCO CLAIMS 030

06/04/2004 17:28 4012... HAWTHORNE AVIAT PAGE 01

Blue Skies Skydiving, Inc. d/b/a

# BOSTON-PROVIDENCE SKYDIVING CENTER

EXPERIENCED WAIVER exp - 7/31/03

Name: Suzanne Costa Email Address: ____ Occupation: ____

USPA# and Exp. Date: 180988 Reserve Repack Date: ____ Height: 5'1" Weight: 105

Address: 433 Oliver St. New Bedford City: New Bedford State: MA Zip: 02745

Home Phone #: (508) 995-7866 Work Phone #: ( ) ____ Cell Phone #: (508) 259-2532

Date of Birth: 10/29/66 Sex: F Age: 35 Driver's Lic #: C0962241

In Case of Emergency, Notify: Lígia Costa Relation: Sister-in-law Phone #: (508) 995-7946

Skydiving Status of Registrant (check one)

- ( ) First Jump Student
- (X) Novice
- ( ) A License
- ( ) B License
- ( ) C License
- ( ) D License

Total No. of Jumps of Registrant: 13

Check here if corrective lenses: ✓

I recognize that the sport of parachuting is a strenuous, athletic endeavor requiring me to be in good physical condition and that even if in good physical condition I may suffer or become prone to knee, ankle, neck and/or back degeneration or ailments. I hereby certify that I am not aware of, and do not suffer from, any physical infirmities or chronic illnesses that would affect my ability to safely engage in parachute training or jumping, and that I am not now under any treatment for any physical or medical condition or any of the following:

1. Cardiac or pulmonary condition or disease
2. High or low blood pressure
3. Fainting spells, convulsions or epilepsy
4. Hearing loss or impairment
5. Neck or back sprains or injury of any kind
6. Nervous or mental disorders
7. Diabetes
8. Kidney or related diseases
9. Shortness of breath
10. Drug or alcohol dependency
11. Any orthopedic, bone or musculoskeletal condition
12. Any impairment of alertness

Medical Statement (SC) Initial

I also certify that I have in my possession a statement of physical fitness for parachuting signed by a registered physician and dated within a period of one-year prior to the time of jumping.

(SC) Initial

I further certify that I am not on any regular medication and have not taken any alcoholic beverages or drugs within the last twelve (12) hours. I also recognize that it is against Federal, United States Parachute Association, and Boston-Providence Skydiving Center rules and regulations to take either alcohol or drugs while engaging in parachuting activities and agree to refrain from doing so.

(SC) Initial

I certify that I am at least 21 years of age, or that I am at least 18 years of age and have in my possession written parental consent.

(SC) Initial

I UNDERSTAND THAT THE SPORT OF SKYDIVING EVEN IF PROPERLY PRACTICED COULD CAUSE SERIOUS INJURY OR EVEN DEATH. I RECOGNIZE THAT IT IS AN ADULT SPORT AND I AGREE TO TREAT IT AS SUCH.

(SC) Initial

In consideration of being permitted to utilize the facilities, equipment or training provided by Boston-Providence Skydiving Center or the services of any of its personnel or of any "Related Party" as the term shall be defined herein to engage in parachute jumping, ground instruction, flying and related activities hereinafter collectively referred to as "parachuting activities", I hereby agree as follows:

1. I hereby RELEASE AND DISCHARGE any person or entity connected in any way with my training, flying, skydiving or parachute jumping, including but not limited to Boston-Providence Skydiving Center, Robert J. Spencer, Blue Skies Skydiving, Inc., Jump One, Inc., Rhode Island Airport Corporation, Hawthorne Aviation Rhode Island, Inc., Sun Path Products, Inc., New England Aviation, Inc., Toll-Free Skydive Network, Inc., their officers, directors, agents, employees; all property owners, aircraft owners, pilots, aircraft or other contractors or providers; all instructors, jumpmasters and riggers utilized for parachuting activities; all airport operators and/or owners and fixed-base operators, mechanics and aircraft maintenance persons; all equipment manufacturers or suppliers; all municipalities and utilities and the United States Parachute Association (all hereinafter collectively referred to as "Released Parties", which term shall include each person so released in his individual as well as representative capacity and whether or not an employee, volunteer or dependent contractor), from any and all suits, claims, liability, demands or causes of action that I may hereafter have for injuries and/or damages arising out of my participation in parachuting activities, wherever and whenever conducted, including but not limited to LOSSES CAUSED BY THE NEGLIGENCE OR OTHER FAULT OF THE RELEASED PARTIES.

( ) Initial

2. I further agree that I WILL NOT SUE, OR MAKE A CLAIM AGAINST, the Released Parties for damages or other losses sustained as a result of my participation in parachuting activities ( ). I also agree to INDEMNIFY AND HOLD THE RELEASED PARTIES HARMLESS from all expenses, judgments, awards or costs, including attorney's fees, incurred in connection with any claim brought by me, my estate, heirs, or by any person as a result of my participating in parachuting activities, whether suit be filed or not. Should I violate this covenant, an action against me for any such attorney's fees, including the fees for such action, may at the option of any Released Party proceed independently and without regard to any right or claim I might have or make that such action should go forward only as a counterclaim, or as a claim joined with any filed by me or in my behalf, and I agree not to seek joinder or consolidation. I understand and I agree that any and all releases given or made by me in this document shall continue and inure to the benefit of any Released Party with whom I may have in the past or may in the future interact or contract for any purpose connected in any way with parachuting, or flying or skydiving on an individual, separate or private basis.

( ) Initial

3. I understand and acknowledge that parachuting activities have inherent dangers that no amount of care, caution, instruction or experience can eliminate and I EXPRESSLY AND VOLUNTARILY ASSUME ALL RISK OF DEATH OR PERSONAL INJURY SUSTAINED WHILE PARTICIPATING IN PARACHUTING ACTIVITIES WHETHER OR NOT CAUSED BY ANY DEGREE OF NEGLIGENCE OR FAULT OF THE RELEASED PARTIES OR ANY DEFECT IN THE AIRCRAFT OR EQUIPMENT PROVIDED OR LANDING AREA OR SURROUNDINGS.

( ) Initial

4. I have been advised and recognize that my parachuting activities are not covered by any personal accident or general liability insurance policy issued to the Released Parties. The Released Parties carry no insurance of any kind or that might provide medical payments to me. I further assume all responsibility for any damages, harm or injury of any nature that my parachuting activities may cause to others.

( ) Initial

5. Adequate provisions for survivors: I certify that considering my life style and manner in which I am supporting my dependents, I have made adequate provisions for my spouse, if any, children, if any, my heirs and all other persons dependent upon me so that in the event of my death or disability they will not suffer financial loss.

( ) Initial

6. I hereby expressly recognize that this Agreement and Release of Liability is a contract pursuant to which to which I have released any and all claims against the Released Parties resulting from my participation in parachuting activities including any claims caused by the negligence of the Released Parties. I hereby confirm that I have been given an option to purchase a waiver of the RELEASE OF LIABILITY AND COVENANT NOT TO SUE provisions contained in paragraphs 1 and 2 of this Agreement for an additional cost of one thousand dollars ($1,000). I have chosen to (circle and initial one)

A. PURCHASE ( ) B. NOT PURCHASE ( )

this waiver. It is understood that the purchase of this waiver does not constitute a contract of insurance but only a waiver of the contractual defenses that would otherwise be available to the Released Parties.

( ) Initial

7. Spectator's covenant: If I am to be observing any part of the Parachuting Activities of a friend, relative or family member from on or near the premises of facilities of any of the Released Parties, I COVENANT AND AGREE as follows: In consideration of my being allowed to witness or observe the Parachuting Activities of my friend, relative or family member,

or in consideration of being allowed to enter upon or maintain upon the premises or facilities of any Released Party for such purpose. I hereby WAIVE AND RELEASE any and all claim(s) of every kind and nature which I may have, or may hereafter have, arising from my friend's, relative's or family member's participation in Parachuting Activities, including specifically but without limitation any claim or claims for or on account of loss of consortium, loss of economic support, negligent infliction of emotional distress, emotional distress, or other loss and I will SAVE, HOLD HARMLESS AND INDEMNIFY the Released Parties of and from any such claim(s), whenever brought by any person, including specifically any attorney's fees incurred by any Released Party in responding to or defending the same, whether suit be brought or not.

( ______ ) Initial

8. Limitation of Warranty: No individual or party warrants other than that the equipment, to be used by the person making this release has been previously used for parachuting activity. THIS WARRANTY IS THE ONLY WARRANTY MADE AND IS MADE IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO A WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

9.

( ______ ) Initial

10. Venue of Disputes: If I should violate my covenant not to sue, I agree the sole, proper venue of or for any action shall be the State Court of Providence County, Rhode Island, and stipulate that any action filed elsewhere may be dismissed.

( ______ ) Initial

11. Duration of Release: It is my understanding and intention that this release is effective not only for my first jump or plane flight, but also for all subsequent jumps or flights made with the facilities or equipment of, or in any way involving the personnel of or relying on the training provided by, the Released Parties.

( ______ ) Initial

12. Enforceability: I agree that if any portion of this document should be found to be unenforceable or against public policy, then only the least part of said portion shall fail, but I specifically waive any unenforceability or any public policy argument that I may make or that may be made on my behalf, or by or on behalf of my estate or anyone who would sue because of my, or anyone's injury or death.

( ______ ) Initial

13. Whole Agreement: I acknowledge that this is the WHOLE AND ENTIRE agreement between the Released Parties and me.. I am relying on no other oral or other terms, representations, assurances or any written or printed material of any kind.

( ______ ) Initial

I HAVE CAREFULLY READ THIS AGREEMENT AND RELEASE OF LIABILITY, FULLY UNDERSTAND ITS CONTENTS AND SIGN IT OF MY OWN FREE WILL. I UNDERSTAND IT IS A BINDING CONTRACT AND THAT I AM FREE TO OBTAIN LEGAL ADVICE BEFORE SIGNING. I UNDERSTAND THAT I AM GIVING UP, AND INTEND TO GIVE UP, IMPORTANT LEGAL RIGHTS. I understand that no oral representations or statements of any kind by any person can modify the rights or defenses this instrument creates in the Released Parties, which rights and defenses may be in addition to those available under statute, the common law and the laws of this jurisdiction. I further agree that should I for any reason fail to initial any part of this release, I will be deemed to have done so, and to have selected the "not purchase" waiver option if I have failed to indicate a choice or to pay the sum required.

Dated: 8/11/ 20 02 Signature: ______________________

ACKNOWLEDGEMENT OF WITNESS

I hereby certify that I have personally witnessed and verified that the person whose name appears above has read this document and understood the nature and consequences thereof, and that he or she appeared to me to be in full capacity, of sound mind, and under no constraint or undue influence.

Dated: ______________ 20___ Signature ______________________
(Witness to Signature above)

# BOSTON-PROVIDENCE SKYDIVING CENTER

## DROPZONE RULES

- Gear, logbook, waiver, and USPA checked before manifesting.
- Pre-pay for all jumps.
- Each person shall manifest for himself or herself.
- Canopies must be open at or above 3000' AGL.
- Avoid crossing Runway 05-23 below 1000' AGL.
- Please follow a left traffic pattern.
- Land in the appropriate landing area. (See diagram below)
- Smoking is allowed only in designated areas.
- Gear will not be stored at the Drop Zone.
- Be safe. Have fun. Think.




By my signature below, I certify that I have read and understand the rules stated above.

Signature: ______________________ Date: 8/17/02

# EXHIBIT B

**HEARING DATE:** June 3, 2008

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

SUZANNE MARIE COSTA, CARLOS COSTA, and MATTHEW COSTA, by and through Suzanne Marie Costa and Carlos Costa As Guardians,
Plaintiffs

Docketed 3/14/08

v.

DANIEL KING, BLUE SKIES SKYDIVING, INC., d/b/a BOSTON-PROVIDENCE SKYDIVING CENTER, ROBERT J. SPENCER, RHODE ISLAND AIRPORT CORPORATION, INC., HAWTHORNE AVIATION RHODE ISLAND, INC., PIEDMONT HAWTHORNE AVIATION, INC., KEVIN McCOLE and John Does,
Defendants

C.A. No. 05-0140

**DEFENDANTS PIEDMONT HAWTHORNE AVIATION, INC., HAWTHORNE AVIATION RHODE ISLAND, INC. AND RHODE ISLAND AIRPORT CORPORATION, INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendants Piedmont Hawthorne Aviation, Inc, Rhode Island Airport Corporation, Inc., ("RIAC") and Hawthorne Aviation, Inc. respectfully move this Court to enter summary judgment, pursuant to Rule 56(c) of the Superior Court Rules of Civil Procedure, because there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

3-13-08
K.H.

927528.1

In support hereof, Defendants submit the attached Memorandum of Law.

DEFENDANTS PIEDMONT HAWTHORNE AVIATION, INC., HAWTHORNE AVIATION RHODE ISLAND, INC. and RHODE ISLAND AIRPORT CORPORATION, INC.

By Their Attorneys,

PARTRIDGE SNOW & HAHN LLP

Howard A. Merten (#3171)
James W. Ryan (#4042)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: March 13, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing DEFENDANTS PIEDMONT HAWTHORNE AVIATION, INC., HAWTHORNE AVIATION RHODE ISLAND, INC. AND RHODE ISLAND AIRPORT CORPORATION, INC.'S MOTION FOR SUMMARY JUDGMENT was mailed, postage prepaid, on this 19th day of March, 2008, to:

| | |
|---|---|
| Stephen P. Harten, Esq.<br>Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>1600 Financial Plaza<br>Providence, RI 02903 | David D. Bagus, Esq.<br>Bagus & Beagan, LLC<br>176 Eddie Dowling Hwy., Suite 202<br>North Smithfield, RI 02896 |
| Francis A. Connor, Esq.<br>Taylor Duane Barton & Gilman<br>10 Dorrance Street, Suite 700<br>Providence, RI 02903 | David N. Zeehandelaar, Esq.<br>Lev Kalman, Esq.<br>Blank Rome LLP<br>One Logan Square<br>Philadelphia, PA 19103 |
| Dennis E. Carley, Esq.<br>Daniel E. Burgoyne, Esq.<br>Roberts Carroll Feldstein & Pierce, Incorporated<br>Ten Weybosset Street<br>Providence, RI 02903-2308 | |

Sharon N. Boyle



927528.1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

SUZANNE MARIE COSTA, CARLOS COSTA, and MATTHEW COSTA, by and through Suzanne Marie Costa and Carlos Costa As Guardians,
Plaintiffs

v.

DANIEL KING, BLUE SKIES SKYDIVING, INC., d/b/a BOSTON-PROVIDENCE SKYDIVING CENTER, ROBERT J. SPENCER, RHODE ISLAND AIRPORT CORPORATION, INC., HAWTHORNE AVIATION RHODE ISLAND, INC., PIEDMONT HAWTHORNE AVIATION, INC., KEVIN McCOLE and John Does,
Defendants

C.A. No. 05-0140

**DEFENDANTS PIEDMONT HAWTHORNE AVIATION, INC., HAWTHORNE AVIATION RHODE ISLAND, INC. AND RHODE ISLAND AIRPORT CORPORATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## 1. INTRODUCTION

Plaintiffs filed their Complaint on February 7, 2005 as a result of injuries Plaintiff Suzanne Marie Costa sustained while skydiving. After jumping out of an airplane, Ms. Costa landed at the edge of the landing zone – with one foot on the pavement – adjacent to where the next group of parachutists was boarding the aircraft to themselves go skydiving. Her parachute became entangled in the propeller of the aircraft and her arm was severely injured.

Before being allowed to jump from a plane, Plaintiff Costa executed a Waiver releasing, among many others, the Rhode Island Airport Corporation ("RIAC"), the lessee of the

3-13-08 Ex. H.

airport; Hawthorne Aviation of Rhode Island, Inc. ("Hawthorne"), the operator of the airport, and Hawthorne's parent company, Piedmont Hawthorne Aviation, Inc. ("PHA") (collectively, the "Airport Defendants") from any and all claims arising out of her participation in skydiving activities. Plaintiff Costa affixed her initials in nineteen (19) separate locations on the Waiver. The Waiver clearly and unambiguously released the Airport Defendants from all liability resulting from her participation in parachuting activities that afternoon. The significance of Ms. Costa's injuries does not change the controlling legal significance of the Waiver she executed. This Court should enter summary judgment pursuant to Super. R. Civ. P. 56(c). There is no genuine dispute as to any material fact and these defendants are entitled to judgment as a matter of law.[1]

## II. STATEMENT OF UNDISPUTED FACTS

### The Defendants

RIAC is the lessee of North Central State Airport in Smithfield, Rhode Island. Hawthorne is a subsidiary of PHA and was under contract from RIAC to manage outlying general aviation airports including North Central State Airport (Depo. Tr. Moder, P. 14, L. 11).

### The Waiver

Plaintiff Costa recalls filling out a form entitled "Boston-Providence Skydiving Center Experience Waiver" (the "Waiver"), a copy of which is attached as Exhibit A. Costa Answers to RIAC Ints., No. 2. Ms. Costa voluntarily executed the Waiver, including the document captioned "Boston-Providence Skydiving Center Dropzone Rules" ("Dropzone Rules") on August 17, 2002. Exhibit A; Costa Resp. to Sec. Req. for Admissions, ¶¶ 2-3. Not only did she sign the Waiver, she affixed her initials in nineteen (19) separate locations

[1] The present motion is limited to the dispositive legal effect of the Waiver signed by plaintiff. The Airport Defendants specifically reserve all rights to challenge Plaintiffs' other legal theories, which are also factually and legally deficient.

throughout the Waiver. At the time she signed the Waiver, she was over eighteen (18) years old; of sound mind; was not suffering from any mental impairment and was not under the influence of any drugs or alcohol. Costa Resp. to Sec. Req. for Admissions, ¶¶ 4-9. Ms. Costa admits that she represented on the Waiver that she was a novice skydiver with thirteen (13) prior skydives. Exhibit A; Costa Resp. to Sec. Req. for Admissions, ¶¶ 12-14. Ms. Costa provided appropriate information – in her own handwriting – in response to numerous blanks contained at the top of the Waiver, including who to contact in the event of an emergency. Exhibit A; Costa Resp. to Sec. Req. for Admissions, ¶¶ 1-5.

The front page of the Waiver provided in capital, underlined letters: I UNDERSTAND THAT THE SPORT OF SKYDIVING EVEN IF PROPERLY PRACTICED COULD CAUSE SERIOUS INJURY OR EVEN DEATH. Exhibit A. (Emphasis in original.) Ms. Costa, by her own admission, understood and accepted the risks inherent in skydiving, including serious injury or even death. Costa Resp. to Sec. Req. for Admissions, ¶ 21.

Paragraph 1 of the Waiver states:

> I hereby RELEASE AND DISCHARGE any person or entity in any way connected with my training, flying, skydiving or parachute jumping, including but not limited to… Rhode Island Airport Corporation, Hawthorne Aviation Rhode Island, Inc., … all airport operators and/or owners and fixed-based operators (all hereinafter collectively referred to as "Released Parties"…) …from any and all suits, claims, liability, demands, or causes of action that I may hereafter have for injuries and/or damages arising out of my participation in parachuting activities, whatever and whenever conducted, including but not limited to LOSSES CAUSED BY THE NEGLIGENCE OR OTHER FAULT OF THE RELEASED PARTIES. (Emphasis in original.)

Paragraph 2 of the Waiver provides in capital letters: I WILL NOT SUE, OR MAKE A CLAIM AGAINST the Released Parties for damages or other losses sustained as a result of my participation in parachuting activities. Exhibit A. (Emphasis in original.) Ms. Costa affixed her initials immediately after this sentence. *Id.*; Costa Resp. to Sec. Req. for

Admissions, ¶ 5. This paragraph continues, in part: "I also agree to INDEMNIFY AND HOLD THE RELEASED PARTIES HARMLESS from all expenses, judgments, awards or costs, including attorney's fees, incurred in connection with any claim brought by me, my estate, heirs, or by any person as a result of my participating in parachuting activities … ." (Emphasis in original.) *Id.*

Paragraph 3 of the Waiver provides in capital letters:

> I EXPRESSLY AND VOLUNTARILY ASSUME ALL RISK OF DEATH OR PERSONAL INJURY SUSTAINED WHILE PARTICIPATING IN PARACHUTING ACTIVITIES WHETHER OR NOT CAUSED BY ANY DEGREE OF NEGLIGENCE OR FAULT OF THE RELEASED PARTIES OR ANY DEFECT IN THE AIRCRAFT OR EQUIPMENT PROVIDED OR LANDING AREA OR SURROUNDINGS. Exhibit A.

Ms. Costa also initialed this paragraph. Costa Resp. to Sec. Req. for Admissions, ¶ 22.

Ms. Costa initialed paragraph 5 of the Waiver that contained a certification that the person executing the Waiver has made adequate provisions for their survivors in the event of her death or disability. Exhibit A; Costa Resp. to Sec. Req. for Admissions, ¶ 5. Ms Costa also initialed paragraph 11 of the Waiver concerning the fact that the Waiver would be kept on file for future skydiving activities subsequent to August 17, 2002. *Id.*

Paragraph 6 of the Release is unique in that two blank spaces are provided following a portion of the text to allow the signing party to indicate their choice of options. Exhibit A. This paragraph reads in total:

> I hereby expressly recognize that this Agreement and Release of Liability is a contract pursuant to which to which [sic] I have released any and all claims against the Released Parties resulting from my participation in parachuting activities including any claims caused by the negligence of the Released Parties. I hereby confirm that I have been given an option to purchase a waiver of the RELEASE OF LIABILITY AND COVENANT NOT TO SUE

> provisions contained in paragraphs 1 and 2 of this Agreement at an additional cost of one thousand dollars ($1,000). I have chosen to: (circle and initial one):
>
> A. PURCHASE (_____) B. NOT PURCHASE (_____)
>
> this waiver. It is understood that the purchase of this waiver does not constitute a contract of insurance but only a waiver of the contractual defenses that would otherwise be available to the Released Parties.
>
> (Emphasis in original.)

Ms. Costa selected option B (NOT PURCHASE) as indicated by her initials in the space provided for B and the absence of her initials adjacent to A. Exhibit A; Costa Resp. to Sec. Req. for Admissions, ¶¶ 5, 23, 24. Ms. Costa also initialed in the space provided following the remaining text of this paragraph. Exhibit A; Costa Resp. to Sec. Req. for Admissions, ¶ 5.

Further, as it relates to Plaintiff Carlos Costa, the husband of Ms. Costa, the Waiver provides a so-called spectator's covenant in paragraph 7. This covenant provides that any individual observing any part of the parachuting activities of a family member from or near the premises of any of the Released Parties (as such term is defined in the Waiver) waives and releases all claims – including loss of consortium – arising from the family member's participation in parachuting activities. Exhibit A, ¶ 7. Moreover, this paragraph also provides the spectator will SAVE, HOLD HARMLESS, AND INDEMNIFY the Released Parties of and from any such claim, including attorney's fees incurred by any Released Party defending any claim. *Id.* (Emphasis in original.) Lastly, the Waiver contains the following language just above the signature block, again all in capital letters:

> I HAVE CAREFULLY READ THIS AGREEMENT AND RELEASE OF LIABILITY, FULLY UNDERSTAND ITS CONTENTS AND SIGN IT OF MY OWN FREE WILL. I UNDERSTAND IT IS A BINDING CONTRACT AND THAT I AM FREE TO OBTAIN LEGAL ADVICE BEFORE SIGNING. I

> UNDERSTAND THAT I AM GIVING UP, AND INTEND TO GIVE UP, IMPORTANT LEGAL RIGHTS. ... .

Ms. Costa signed and dated the Waiver just below this language. Exhibit A; Costa Resp. to Sec. Req. for Admissions, ¶ 3.

**The Day Of The Accident**

After her initial visit to North Central Airport, Ms. Costa returned to parachute again on September 29, 2002. After jumping from the aircraft and deploying her parachute, Ms. Costa testified that she:

> "... Dove out normally. Did a couple of tricks. Each time, you know, you do something a little bit different as far as tricks. Some times you just spin, other times, you just float. I remember being under the canopy, being proud of myself, because I know I did a really good job as far as – like you do when you are at different levels. I remember watching the windsock because that would tell you which direction you should come into the airport."
> *See*, Costa Deposition, attached hereto as Exhibit B, Page 71, Line 25 through Page 75, Line 10.

Ms. Costa testified that the tricks she performed included barrel rolls, spinning to the left, spinning to the right, and other things she learned during her parachute instruction in California. Exhibit B, Costa Deposition, Page 73, Line 1.

Ms. Costa ultimately landed close to her family and friends who had gathered to watch her skydive at the edge of the dropzone designated for "Tandems, Team, Staff." Costa Answers to RIAC Ints., No. 5. Ms. Costa admits she was not participating in a tandem jump, nor was she either a member of a jump team or staff member. Costa Resp. to Sec. Req. for Admissions, ¶ 18-20. She was aware that the airport taxiway was in close proximity to the very edge of the landing zone designated for "Tandems, Team, Staff" prior to her skydive on September 29, 2002. Costa Ans. Piedmont Hawthorne Aviation, Inc. Ints., No. 7.

When asked at her deposition where she landed, Ms. Costa testified:

> I straddled -- there's this divider, it's like a chain, almost like a rope type of thing, and then there is these metal things they put into the ground, and I had one foot on the pavement and I straddled it, and one foot on the grass area, the land zone area, and I remember going, oh, because just the equipment is so heavy, and I had to lift up my leg, and I remember looking over to the right, I waved at everybody, I said yahoo, and it was like a split second and I just got pulled.

Exhibit B, Costa Deposition, Page 77, Lines 5-18.

Upon landing, Ms. Costa's parachute became entangled in the propeller of the aircraft located approximately 20 feet from where she maneuvered herself to land. Costa Ans. Rhode Island Airport Corporation Ints., No. 5.

**Plaintiff's Complaint**

Plaintiffs' Complaint alleges negligence the against the Airport Defendants claiming that they owed a duty to Ms. Costa to design, manage, and operate the North Central Airport facility in a manner "...so as to ensure that persons using the facility in the exercise of due care ... did not come into contact with the rotating blades of airplane propellers while engaged in skydiving or other activities." Complaint, Counts Four, Five and Six. The complaint further alleges that "through the gross negligence and willful, wanton, and reckless conduct" and by other negligent acts, [the Airport Defendants] failed to exercise due care in the operation and management of the" airport and as a direct and proximate result Ms. Costa was injured. *Id.*

## III. STANDARD OF REVIEW

Summary judgment is a favored procedure and not a mere procedural shortcut. *Celetox Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is an appropriate remedy. Super. R. Civ. P. 56(c); *McPhillips v.*

*Zayre Corporation*, 582 A.2d 747, 749 (R.I. 1990). Plaintiffs have an affirmative duty to show that there is a genuine issue of material fact to be resolved at trial in order to defeat defendants' motion for summary judgment. *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223 (R.I. 1996). In order to establish a genuine issue of material fact, the non-moving party may not merely rest on the allegations asserted in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Hydro-Manufacturing, Inc. v. Kayser-Roth Corp.*, 640 A.2d 950 (R.I. 1994); *Grissom v. Pawtucket Trust Company*, 559 A.2d 1065 (R.I. 1989). Rather, the non-moving party must show that there is sufficient evidence to support its claim of an actual dispute that will require a choice between the parties' differing versions of truth at trial. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976)).

In this case, there are no disputes regarding the facts supporting this motion. The only issues to be resolved in this case are purely legal. First, this Court must determine whether the Waiver at issue is clear and unambiguous, which is a matter of law. Second, because interpretation of unambiguous contracts is also a pure matter of law, this Court must apply the terms of the contract as written, with the terms read with their usual, plain and ordinary meaning.

## IV. ARGUMENT

### A. The Terms Of The Waiver Are Clear And Unambiguous And Should Therefore Be Applied And Enforced As Written.

In interpreting contractual agreements, "[a] reviewing court has no need to construe contractual provisions unless those terms are ambiguous. When terms of a contract are clear and unambiguous, the court should apply them as written." *A.F. Lusi Construction , Inc. v. Peerless Ins. Co.*, 847 A.2d 254, 258 (2004) (citations omitted). "If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written."

*Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004) (citing *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994)).

Rhode Island courts have consistently held that agreements are ambiguous only when they are clearly susceptible to more than one interpretation. *Gustafson v. Max Fish Plumbing & Heating Co.*, 622 A.2d 450, 452 (R.I. 1993); *Nelson v. Ptaszek*, 505 A.2d 1141, 1143 (R.I. 1986). In situations in which the language of a contractual agreement is plain and unambiguous its meaning should be determined without reference to extrinsic facts or aids. *Clark-Fitzpatrick, Inc., v. Gill,* 652 A.2d 440, 443 (R.I. 1994);. The "determination of ambiguity, a question of law, is confined to the four corners of the agreements." *Rivera*, 847 A.2d 280, 284 (quoting *Rubery v. Downing Corp.*, 760 A.2d 945, 947 (R.I. 2000)). *See, also, W.P. Associates v. Forcier*, 637 A.2d 353, 356 (R.I. 1994).

Rhode Island courts have repeatedly applied these black letter principles of law to waivers and upheld exculpatory clauses that negate liability for negligence where the language is specific, clear and unambiguous. *See, e.g., Crowther v. Mariner Square,* 667 A.2d 789 (R.I. 1995); *Rhode Island Hospital Trust National Bank v. Dudley Service*, 605 A.2d 1325 (R.I. 1992); *Best Impressions, Inc. v. Port Edgewood Ltd.*, 641 A.2d 1323 (R.I. 1994); *Corrente v. Conforti & Eisele Co.*, 468 A.2d 920 (R.I. 1983); *DiLonardo v. Gilbane Building Co.*, 334 A.2d 422 (R.I. 1975). The Rhode Island Supreme Court examines such contracts to determine their intent, and where that intent is apparent, the court will enforce the parties' agreement. *Best Impressions, Inc.* , 641 A.2d at 1324. It is not violative of public policy for individuals to limit liability for their own negligence through contract. *Rhode Island Hospital Trust National Bank*, 605 A.2d at 1327.

The Waiver attached hereto as Exhibit A is clear and unambiguous. In fact, it is the equivalent of a legal sledgehammer. Its purport and import are apparent, repeated, capitalized, stark and separately initialed nineteen (19) times by Ms. Costa. The terms are not reasonably susceptible to more than one interpretation. The plain, ordinary and usual meaning of the language contained in the Waiver executed by Ms. Costa prior to engaging in parachuting at North Central State Airport leads to one inescapable logical conclusion – she voluntarily waived her right to sue for any injuries she might suffer in exchange for the thrill of jumping out of a plane. The Court should enforce the terms of the Waiver written.

**B. The Undisputed Facts Demonstrate That Ms. Costa Waived Her Right To Sue For The Injuries About Which She Now Complains.**

Ms. Costa was no stranger to jumping out of planes. She had done so on thirteen occasions prior to September 29, 2002. Exhibit A. Ms. Costa testified that nobody pressured her to sign the Waiver. Exhibit B, Costa Deposition, Page 169, Lines 2-3. She was not coerced in any way into signing and initialing the Waiver and did so voluntarily. Exhibit B, Costa Deposition, Page 192, Lines 4-15. She further testified that no one at Blue Sky Skydiving ever indicated that they did not have time for her questions. Exhibit B, Costa Deposition, Page 187, Line 18. Ms. Costa also testified that she never signed her signature under false pretenses. Exhibit B, Costa Deposition, Page 132, Lines 23-24.

Ms. Costa signed the Waiver because she knew if she didn't sign and initial it, she would not be permitted to skydive. Exhibit B, Costa Deposition, Page 192, Lines 4-15; Page 21, Line 17. Ms. Costa knew that the Waiver she signed and initialed 19 times had legal consequences. She acknowledged that the Waiver was a "legal document so that I could jump." Exhibit B, Costa Deposition, Page 19, Line 7.

The paragraph preceding Ms. Costa's signature states in capital letters her certification that, among other things, she has read the agreement. Exhibit A. Nonetheless, Ms. Costa claims she did not pay attention to the Waiver. "I just wanted to get out there and go skydive. It was a technicality." Exhibit B, Costa Deposition, Page 165, Lines 12-19. The Waiver was "just a form that you sign. I mean, I was trying – the only way to skydive is if I sign a form. I don't know. I don't know how else to say it." Exhibit B, Costa Deposition, Page 130, Line 9. Rhode Island law, however, is clear that a person who fails to read the terms of the writing does so at her own risk. In the absence of extenuating circumstances, such as fraud, duress, or mutual mistake, a person's failure to read the terms of the contract is not a defense where the person has still manifested her assent to the contract by signing it. *Westerly Hosp. v. Higgins*, 256 A.2d 506, 509 (1969); *See, also, Hulsey v. Elsinore Parachute Center,* 168 Cal. App. 3d 333 (4th Dist. 1995) (discussing argument that skydiver did not realize what he was signing); 2 Williston, Contracts § 6.43 at 457-5 9; 1 Restatement, Contracts, §70; 3 Corbin, Contracts, §607. The deposition testimony recounted above makes clear that none of these policy-based extenuating circumstances existed. Ms. Costa just wanted to jump.

Nor can there be any dispute that the legal consequences of her jumping – and signing the legal document that allowed her to do so – were spelled out to Ms. Costa repeatedly and starkly. The Waiver language is clear and the release is not unnecessarily complicated. Capitalization is used at key points throughout the Waiver to draw attention and heightened scrutiny to certain provisions, in particular provisions where Ms. Costa was relinquishing legal rights. The Waiver conditioned Ms. Costa's ability to skydive on her express release and discharge of "any person or entity connected in any way with my training, flying, skydiving or parachute jumping, including but not limited to … [the Airport Defendants]… from any and all

suits, claims, liability, demands or causes of action that I may hereafter have for injured and/or damages arising out of my participation in parachuting activities ... including but not limited to LOSSES CAUSED BY THE NEGLIGENCE OR OTHER FAULT OF THE RELEASED PARTIES." Exhibit A, ¶1. The emphasis via all capital letters appears in the original Waiver. Paragraph 2 of the Waiver expressly provided that Ms. Costa "WILL NOT SUE, OR MAKE A CLAIM AGAINST the Released Partied for damages or other losses sustained as a result of [her] participation in parachuting activities." *Id.*, ¶ 2. (Emphasis in original.) Ms. Costa was also offered – but declined – the option to purchase a waiver of the "RELEASE OF LIABILITY AND COVENANT NOT TO SUE." (Emphasis in original.) *Id.*, ¶ 6; Costa Resp. to Sec. Req. for Admissions, ¶ 23-24. This paragraph also states that the Waiver constitutes a contract that released "any and all claims against the Released Parties resulting from my participation in parachuting activities including any claims caused by the negligence of the Released Parties." Exhibit A, ¶ 6.

While wholly unnecessary in light of the obvious extreme nature of the activity involved, the Waiver also clearly and repeatedly stated that serious injury or death could result from parachuting – even if it is properly practiced. The introductory language on the Waiver notes that skydiving is a strenuous activity and even those participants in good health may encounter injuries. Exhibit A. Paragraph 3 of the Waiver provides that the participant expressly and voluntarily assumed all risk of death and injury sustained while participating in skydiving activities. *Id.* Paragraph 5 of the Waiver is particularly poignant. It is titled "Adequate provisions for survivors" and provides a certification that the parachutist has made "adequate provisions for [their] spouse, if any, children, if any, [their] heirs and all other persons dependent

upon [the parachutist] so that in the event of [the parachutist's] death or disability they will not suffer financial loss." *Id.*

Nor is there any factual dispute that Plaintiff Costa was injured while participating in "parachuting activities." The Complaint specifically alleges that the Airport Defendants' supposed duty of care was ... to ensure that persons using the facility ... did not come into contact with the rotating blades of airplane propellers **while engaged in skydiving** or other activities. Complaint, Count Four. *See, also,* Complaint, Count Five, Count Six. Plaintiff was injured when her ***parachute*** got tangled in the plane's propeller.

### C. Courts Routinely Enforce Waivers That Preclude Recovery For Parachuting Accidents.

Courts from around the country routinely enforce exculpatory agreements signed by the participants engaged in high-risk activities. And they should. Numerous cases – from State and Federal trial and appellate courts – report dismissal of complaints and grants of summary judgment on the basis of waivers signed by skydivers:[2]

- *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981), affirmed summary judgment on plaintiff's negligence claim arising from a parachuting airplane crash where plaintiff signed a covenant not to sue that exempted the defendant from liability for negligence;

- *Poskozim v. Monnacep*, 475 N.E.2d 1042 (1st Dist. Ill. 1985), affirmed dismissal of plaintiffs' complaints against various defendants for injuries suffered during a parachute jump where plaintiff signed an exculpatory agreement releasing the parachute center and 'all persons whomsoever directly or indirectly liable';

- *Falkner v. Hinckley Parachute Center, Inc.*, 533 N.E.2d 941 (Ill. 2d Dist. 1989), affirmed summary judgment in favor of the defendant on the executor's negligence claim because the training agreement signed by the

[2] Examples of cases involving other extreme sports that reach the same result include: *Ciofalo* v. *Vic Tanney Gyms, Inc.* 10 N.Y.2d 294 (1961)(swimming pool and health club); *Franzek* v. *Calspan Corp.* 434 N.Y.S.2d 288 (1980) (white water rafting); *Solodar* v. *Watkins Glen Grand Prix Corporation,* 317 N.Y.S.2d 228 (1971)(auto racing); *Corpus Christi Speedway* v. *Morton* 279 S.W.2d 903 (Tex.Civ.App. 1955)(auto racing); *Gore* v. *Tri-County Raceway, Inc.* 407 F.Supp. 489 (M.D.Ala. 1974)(auto racing).

decedent acknowledged and accepted the risk associated with parachuting activities and contained an exculpatory clause releasing the center from its negligence;

- *Schutkowski v. Carey*, 725 P.2d 1057 (Wyo. 1986), affirmed summary judgment in favor of defendant skydiving instructors on plaintiff's negligence claim due to the waiver signed by plaintiff;

- *Boucher v. Riner*, 514 A.2d 485 (Md. Ct. Spec. App. 1986), affirmed summary judgment against a skydiver who collided with electrical power lines on the basis of the waiver signed by the plaintiff;

- *Manning v. Brannon*, 956 P.2d 156 (Okla. Civ. App. 1997), reversed a lower court's order entering judgment on a jury verdict on basis of waiver signed by the plaintiff skydiver;

- *Malecha v. St. Croix Valley Skydiving Club, Inc.*, 392 N.W.2d 727 (Minn. Ct. App. 1986), affirmed summary judgment for the defendant on the basis of the waiver executed by the plaintiff;

- *Cain v. Cleveland Parachute Training Center*, 457 N.E.2d 1185 (Ohio Ct. App. 1983), affirmed summary judgment in favor of the defendant on the basis of the waiver executed by the plaintiff;

- *Scrivener v. Sky's The Limit, Inc.*, 68 F.Supp. 277 (S.D. New York, 1999), granted summary judgment in favor of the defendant on the basis of the waiver executed by the plaintiff; and

- *Hulsey v. Elsinore Parachute Center*, 168 Cal. App. 3d 333 (4th Dist. 1995), the upheld the lower court's grant of summary judgment to the parachute center on the basis of the waiver signed by the plaintiff.

The enforcement of these Waivers across numerous jurisdictions comports with black letter law that unambiguous contracts should be enforced according to their terms. They also comport with the public policy of encoring people to fully and intelligently assess the risks of extreme sports before agreeing to participate in them.

The *Hulsey* case cited above is representative of cases dealing with releases in this context. There, a parachuting student sued the parachute center in negligence and strict liability for injuries incurred on the student's first jump. Prior to parachuting, the student signed an

"Agreement & Release of Liability" that stated the student acknowledged and assumed the risk of injury and death, even if such injuries were the result of the parachute center's negligence. *Id.* at 337. The release in *Hulsey* was less comprehensive than the Waiver Ms. Costa signed and initialed over and over again. It did, however, contain similar warnings to the Waiver in the instant case concerning the dangers associated with parachuting and the signor's assumption of risk and release of liability.

The *Hulsey* court noted at the outset that "[w]e are not at all persuaded that plaintiff should be relieved of the legal consequences of the things he signed because he did not realize what he was signing or that somehow he was distracted or misled from a fair realization of what was involved." *Id.* at 339. The court also noted that the size and type of print contained on the release was consistent with that required by California statutes, namely 10 point type for both capital and lower case letters. *Id.*

The plaintiff student admitted that he signed the "Agreement & Release" and that he voluntarily sought out the parachute center to experience parachuting. *Id.* As the student approached the designated landing area, he became entangled in electrical power lines, saw a flash, and subsequently regained consciousness on the ground with a broken wrist. *Id.* at 338. The release signed by the plaintiff was printed in bold type and contained language certifying that the student was aware that parachuting is a dangerous and hazardous activity, that the student was voluntarily participating, and that he agreed to accept any and all risks of injury or death. *Id.* The release contained a covenant not to sue for any injuries resulting from the negligence or other act resulting from participating in parachuting. *Id.* at 340. Further, it provided, in bold-type, that the student had carefully read the agreement and understood that it was a release of liability and an enforceable contract and signed by his own free will. *Id.*

The *Hulsey* court noted that California law requires that exculpatory waivers must "clearly notify the prospective releasor... of the effect of signing the agreement. *Id.* The court held that waiver language was clear to anyone and "it would be hard to imagine language more clearly designed to put a layperson on notice" of the legal consequences of signing it. *Id.* at 341. The court rejected the plaintiff's argument that the release was against public policy by noting that parachuting is not a necessary endeavor for anyone and not subject to a heightened level of public scrutiny. The plaintiff also argued that the waiver was unconscionable. *Id.* at 344. The court rejected this argument stating that the waiver was not unconscionable "[b]ecause the agreement, in both its language and format, was not one which could even remotely operate to defeat the reasonable expectation of plaintiff and hence be unconscionable if enforced." *Id.* at 345. Accordingly, the court upheld the lower court's grant of summary judgment to the parachute center.

Another instructive case comes out of the intermediate appellate court of Maryland. *Boucher v. Riner*, 514 A.2d 485 (Md. 1985), concerns an exculpation agreement signed by the plaintiff, a parachuting student. The plaintiff collided with power lines upon his approach to the designated landing zone, sending 12,500 volts of electricity through his body. The plaintiff alleged, among other things, that the exculpatory agreement was not enforceable. *Id.* at 490. The court recited Maryland law regarding exculpatory clauses succinctly – in the absence of legislation, there is no public policy that precludes parties from contracting as they see fit. *Id.* Two exceptions to this general rule exist: (i) if one party is at an obvious disadvantage in bargaining power at the time the contract is entered; and (ii) where the exculpatory agreement is part of a transaction involving the public interest.

The court observed that the plaintiff decided to parachute of his own volition and he was not compelled to agree to the waiver of his right to sue. *Id.* Moreover, the plaintiff could have elected to pay an additional fee to nullify the waiver. *Id.* He chose not to pay the additional fee and thus waived his right to sue in the event of an accident involving the defendant's negligence. *Id.* at 491. Importantly, the plaintiff was under no compulsion to make a parachute jump and did so because he wanted to skydive. *Id.* Thus, there was no disadvantage in bargaining power. *Id.* As it relates to the public interest exception, the court noted that parachuting is not an activity of great public importance, nor is it a matter of practical necessity for any member of the public. *Id.* For these reasons, the exculpatory clause was held to be enforceable. *Id.*

**D. Public Policy Requires Enforcement Of High-Risk Sport Waivers**

Courts routinely evaluate waivers in light of the nature of the service being provided and the purpose of the waiver. There are good policy reasons for this. People should not enter into contracts involving hazardous recreational activities lightly. *Schutkowski v. Carey*, 725 P.2d 1057, 1062 (Wyo. 1986)(affirming summary judgment in favor of skydiving instructors on waiver signed by plaintiff). Hazardous recreational sports are not essential public services or a practical necessity for anyone. Unquestionably, skydiving is a hazardous recreational sport characterized by a degree of risk that far exceeds more traditional sporting activities. Adults are free to seek out contract to participate in these hazardous recreational activities. When they do, however, they should not be relieved of the legal consequences assumed by signing clear and unambiguous exculpatory contracts when the risk they seek results in injury.

Blue Skies Skydiving, Inc. did not perform a service of any great importance or a practical necessity for anyone in society. Ms. Costa was not "under the control" of anyone.

Rather, she *chose* to perform a solo skydive. She previously completed several levels of skydiving training and had thirteen (13) prior jumps. She purposefully initialed and signed her name to the Waiver that clearly and repeatedly emphasized that she was assuming all risks associated with her participation. Importantly, she was offered, but declined, to purchase a waiver for the release of liability. It was Ms. Costa – and her alone – who elected to go skydiving. She affirmatively sought out the skydiving school at the airport and was under no compulsion to participate in skydiving. As she testified, she liked to skydive because she thought it was fun.

Ms. Costa signed and repeatedly initialed a waiver that contains explicit and unambiguous language similar to the waivers upheld in *Hulsey* and *Boucher*. The *Hulsey* court observed that "it would be hard to imagine language more clearly designed to put a layperson on notice" of the legal consequences of signing it. *Hulsey*, 168 Cal. App. 3d at 341. A review of the Waiver in this case must lead to the same conclusion. Its language is clear, highlighted and repeated. The *Boucher* court noted that the plaintiff, much like Ms. Costa, made the decision to parachute independently and was not compelled to agree to the waiver exculpating the defendants. The *Boucher* plaintiff could have elected to pay an additional fee to nullify the waiver but declined to do so, just like Ms. Costa.

A substantial and well-reasoned body of law exists across our nation that holds plaintiffs to the plain and unambiguous language of the waivers they execute in conjunction with high-risk recreational activities. In contexts much less compelling than exist here – where plaintiff chose of her own accord to engage in obvious, high-risk activity purely for pleasure – Rhode Island courts have routinely upheld exculpation clauses. This Court should not relieve

Ms. Costa from the legal consequences resulting from her decision to sign the Waiver and go skydiving.

**E. Conclusion.**

For these reasons, the Rhode Island Airport Corporation; Hawthorne Aviation, Inc., and Piedmont Hawthorne Aviation, Inc. respectfully request that summary judgment enter in their favor on all counts.

DEFENDANTS PIEDMONT
HAWTHORNE AVIATION, INC.,
HAWTHORNE AVIATION, INC. and
RHODE ISLAND AIRPORT
CORPORATION, INC.

By Their Attorneys,

PARTRIDGE SNOW & HAHN LLP

Howard A. Merten (#3171)
James W. Ryan (#4042)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

OF COUNSEL

David N. Zeehandelaar, Esq.
Lev Kalman, Esq.
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5366

DATED: March 13, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing DEFENDANTS PIEDMONT HAWTHORNE AVIATION, INC., HAWTHORNE AVIATION RHODE ISLAND, INC. AND RHODE ISLAND AIRPORT CORPORATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT was mailed, postage prepaid, on this 13th day of March, 2008, to:

| | |
|---|---|
| Stephen P. Harten, Esq.<br>Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>1600 Financial Plaza<br>Providence, RI 02903 | David D. Bagus, Esq.<br>Bagus & Beagan, LLC<br>176 Eddie Dowling Hwy., Suite 202<br>North Smithfield, RI 02896 |
| Francis A. Connor, Esq.<br>Taylor Duane Barton & Gilman<br>10 Dorrance Street, Suite 700<br>Providence, RI 02903 | David N. Zeehandelaar, Esq.<br>Lev Kalman, Esq.<br>Blank Rome LLP<br>One Logan Square<br>Philadelphia, PA 19103 |
| Dennis E. Carley, Esq.<br>Daniel E. Burgoyne, Esq.<br>Roberts Carroll Feldstein & Pierce, Incorporated<br>Ten Weybosset Street<br>Providence, RI 02903-2308 | |

[signature]



972736.1