DEC:DEB
336601 / 11/16/07
2012-9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND AIRPORT CORPORATION, INC.** | : | |
| **v.** | : | **C.A. No. 07-300 S** |
| **GENERAL STAR INDEMNITY COMPANY** | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant hereby submits this memorandum in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated herein, its motion should be granted.

## INTRODUCTION

This case is an insurance coverage dispute between Rhode Island Airport Corporation ("RIAC"), the insured, and General Star Indemnity Company ("GSIC"), the insurer. On September 29, 2002, Suzanne Marie Costa was skydiving at the North Central Airport in Lincoln, Rhode Island ("Airport") as a customer of Blue Skies Skydiving, Inc. ("BSSI"). Upon landing at the airport, Ms. Costa's parachute became tangled with the rotating propeller of an airplane which was parked on the tarmac. Ms. Costa sustained serious injuries and has brought claims against various persons, including RIAC and BSSI, in the Rhode Island Superior Court for Providence County (the "Costa Action").

RIAC seeks a declaration that GSIC is required to defend it and BSSI in the Costa Action and to indemnify RIAC and BSSI for any losses arising from the accident.

However, because the applicable insurance policy excludes claims for bodily injury due to "airport/skydiving and related services," and because the injury did not occur on the insured premises, RIAC is entitled neither to a defense nor to indemnification from GSIC.

## STATEMENT OF FACTS

The parties have agreed to a Stipulation of Undisputed Facts ("Stip.") which was filed on July 11, 2008. RIAC is a corporation organized under the laws of Rhode Island, and is responsible for operating the Airport under an agreement with the State of Rhode Island. (Stip. ¶ 5.) RIAC, in turn, has contracted with Hawthorne Aviation – Rhode Island, Inc. ("HARI") to provide certain airport management services. *Id.* ¶ 6. BSSI operated a skydiving business at the Airport under annual agreements with HARI which required that it obtain "public liability insurance" naming RIAC and HARI as additional insureds. *Id.* ¶ 7. Therefore, BSSI obtained a Commercial General Liability policy from GSIC ("Policy") which named RIAC as an additional insured. *Id.* ¶ 43. However, GSIC and RIAC dispute whether that policy provides coverage to RIAC and BSSI for the accident underlying this action.

**a. The Accident.**

On September 29, 2002, Suzanne Marie Costa was engaged in skydiving activities at the Airport under the direction of BSSI. (Stip. ¶¶ 21–22.) During flight, Ms. Costa exited a Cessna Grand Caravan 208B aircraft ("Jump Aircraft") and began skydiving, after which the Jump Aircraft proceeded to land at the Airport. *Id.* ¶ 23. The Jump Aircraft landed prior to Ms. Costa. *Id.* ¶ 25. It then proceeded to the boarding area, where it waited with its engine still running and its propeller still rotating, in order that a

group of passengers could board for the next skydiving event. *Id.* ¶ 26. This practice is referred to as "hot loading." *Id.*

The Airport's landing area is divided into several zones, as depicted in a document, called "Dropzone Rules," which BSSI provided to its patrons. *Id.* ¶ 13 & Ex. 2 to Stip. Skydivers are directed by BSSI to land into a particular zone based upon their ability and experience level. *See id.* Novice skydivers are expected to land further away from the spectator/boarding areas, while staff and more experienced skydivers are permitted to land closer to these danger zones. *See id.*

During her descent, it became apparent to witnesses on the ground that Ms. Costa was in danger because she was on a trajectory to overshoot her designated landing zone. John Martin, an eyewitness to the accident, stated that

> [p]eople were screaming at her to turn to the right. Even earlier, she could have turned to the left and landed on the grass. If she had turned on the right, she would have landed on the runway or crossed over the runway and landed in the field between the runways, but she just headed straight across the field until she hit the ground."

(Dep. of John Martin 13:7–14, Ex. A. to this Mem.) Robert Gow, also an eyewitness, similarly testified that he could hear instructors yelling "Turn. Turn. Turn." (Dep. of Robert Gow 9:23, Ex. B to this Mem.)

> And then I looked to talk to Darren [Fiske], I could see his face looking up and just a stunned look on his face. When I looked up, I could see a skydiver coming in and obviously going to overshoot the landing area.

*Id.* at 10:1–5. During Ms. Costa's approach Mr. Gow and Mr. Fiske were standing adjacent to the Jump Aircraft to help load the next group of passengers. *Id.* at 9:4–10.

As Ms. Costa approached the Jump Aircraft, it was oriented so that the propeller was to her right and the tail was to her left. (Stip. ¶ 29.) As Ms. Costa descended to

ground level, Mr. Fiske tackled her as she approached the front of the Jump Aircraft. (Stip. ¶ 30, Gow Dep. 14:11–15:18, Ex. B. to this Mem.) The location of her landing and tackle was directly on the dividing line between the paved tarmac and the grassy field which served as the landing area. (Dep. of Ken Thomas 10:12–25, Ex. C to this Mem.; Dep. of Suzanne Marie Costa 121:9–12, Ex. D. to this Mem; Map of Airport, Ex. 1 to Stip.) Mr. Gow believed that Mr. Fiske probably saved Ms. Costa's life by intervening. (Gow Dep. 39:3–6, Ex. B to this Mem.)

There is limited disagreement among the witnesses as to whether Ms. Costa touched down prior to being tackled. Ms. Costa stated that she touched down just prior to being tackled. (Stip. ¶ 31; Costa Dep. at 119:22–120:17, Ex. D. to this Mem.) However, witnesses John Martin, Ken Thomas, and Robert Gow testified that she was tackled while still in the air. (Martin Dep. 13:16–14:8, Ex. A. to this Mem.; Gow Dep. 14:24–15:13, Ex. B to this Mem.; Thomas Dep. 11:6–12:2, Ex. C. to this Mem.)[1]

In any event, it cannot reasonably be disputed that Ms. Costa's unfortunate meeting with the propeller immediately followed her tackle and landing.

> "It was immediate. I mean, as soon as Darren grabbed her and stopped her or slowed her forward momentum enough, the canopy continued its forward momentum and also went down because it's attached to her, and the canopy got caught in the propeller, and as soon as it did, it pulled her into the propeller.

(Gow Dep. 54:18–24, Ex. B to this Mem.) *See also* Dep. of Ken Thomas 12:16–18, Ex. C. to this Mem (stating that "only seconds" elapsed between the tackle and the pull into the airplane, and that the elapsed time "was just enough for the canopy to fall"); Martin Dep. 14:19–23, Ex. A. to this Mem. (stating that "it was just a matter of seconds, I mean,

[1] Although Mr. Thomas believed that she did not hit the ground, due to his vantage point, he was not entirely certain whether she hit the ground or not,.

five seconds, not even that. It was like bam, bam. As soon as you take the wind out of the parachute, it just collapsed, and because of the way the plane was parked, it got drawn into the prop”).

While Mr. Fiske was temporarily successful at preventing Ms. Costa from colliding with the aircraft, her parachute immediately collapsed into the propeller of the Jump Aircraft. (Martin Dep. 14:19–23, Ex. A. to this Mem.; Gow Dep. 16:4–9, Ex. B. to this Mem.) She was then dragged by her parachute into the rotating propeller. (Stip. ¶ 34.) Ms. Costa testified at her deposition that

> “A. I don’t believe that I would have been stuck in the propeller if it wasn’t the –wasn’t for the parachute because I don’t think anything would have dragged me in.
>
> Q. And that’s what happened, you didn’t walk into the propeller, you got dragged into the propeller; is that right?
>
> A. Like sucked in, yeah.”

(Stip. ¶ 36, Dep. of Suzanne Marie Costa 85:9–17, Ex. D. to this Mem.) She was pulled for at least one revolution around the propeller. (Stip. ¶ 35.) Although she survived, Ms. Costa suffered serious injuries as a result of the accident. *Id.*

**b. The Costa Action.**

On or about January 10, 2005, Ms. Costa instituted an action in the Rhode Island Superior Court for Providence County arising from the injuries sustained in the September 29, 2002 accident. (Stip. ¶ 37; Costa Complaint, Ex. 3 to Stip.) That action, *Suzanne Marie Costa, et al. v. Daniel King, et al.*, C.A. No. 05-0140, remains pending before that Court. RIAC and BSSI were named as a defendant in the Costa Action. The Costa Complaint states that RIAC,

> as owner of the North Central Airport, owed a duty to Ms. Costa to, *inter alia*, design, manage, and operate the North Central Airport facility in a manner so as to ensure that persons using the facility in the exercise of due care, including Ms. Costa, did not come into contact with the rotating blades of airplane propellers while engaged in skydiving or other activities. Said duty includes, but is not limited to, the duty to exercise due care and skill in the provision of property and services, in the selection and supervision of its agents, employees, lessees and other third parties in lawful possession of the facility; in the entrustment of property and authority to its agents, employees, lessees and other third parties; and in the general operation and management of the North Central Airport."

(Stip. ¶ 38, Costa Complaint ¶ 38, Ex. 3 to Stip.) The Costa Complaint also states that RIAC negligently failed to carry out the aforesaid duties and is therefore liable for compensatory damages, interest, and costs. (Costa Complaint ¶ 39–40 & p. 11, Ex. 3 to Stip.)

As to BSSI, the Costa Complaint includes allegations sounding in negligence against BSSI for its alleged breach of duties to design, manage, and operate the BSSI facility in manner so as to ensure that their customers, including Ms. Costa, did not come into contact with the rotating blades of airplane propellers while engaged in skydiving or other activities in the exercise of due care on the BSSI business premises. (Stip. ¶ 40, Costa Complaint ¶ 30, Ex. 3 to Stip.) The Costa Complaint also states that BSSI failed to maintain a safe distance between the boarding site where airplanes would be parked while skydivers embarked on skydiving flights, and the designated skydiving area. (Stip. ¶ 40, Costa Complaint ¶ 31, Ex. 3 to Stip.)

The Costa Action also includes allegations sounding in negligence against Daniel King based upon his piloting of the Jump Aircraft; against BSSI's shareholder/President based on his provision of skydiving services; against Kevin McCole as owner of the Jump Aircraft; against HARI arising from its status as manager and operator of the North

Central Airport; against Piedmont Hawthorne Aviation, Inc. as parent company of HARI; and various other claims. (Stip. ¶ 41; Costa Complaint, Ex. 3 to Stip.)

**c. The Policy.**

The Policy was a "Commercial General Liability" policy which GSIC issued to BSSI, and which named RIAC as an additional insured. (Stip. ¶ 43; Policy 1, Ex. 4 to Stip.) RIAC's agents did not participate in procuring the Policy, which was the responsibility of BSSI to obtain. (Stip. ¶ 44.)

Several portions of the policy are noteworthy. The first is the "Insurance Binder" document, dated March 28, 2002, which states that "THIS BINDER IS A TEMPORARY INSURANCE CONTRACT. . . ." (Stip. ¶ 47; Policy 14, Ex. 4 to Stip.) It also provides that the "DESCRIPTION OF OPERATIONS/VEHICLE/PROPERTY" is "PREMISES LIABILITY –OFFICE. NO COVERAGE INTENDED FOR ANY ACTUAL SKYDIVING OR RELATED OPERATIONS." *Id.* This document was intended to memorialize the agreement to provide insurance, and was in effect only until the complete Policy terms were transmitted to the insured, after which those terms superseded the Insurance Binder as the operative policy document. (Stip. ¶ 48.)

When GSIC denied RIAC's claim for coverage, it sent RIAC a "Denial of Coverage" letter which reproduced relevant portions of the Policy. (Stip. ¶ 50.) First, it sets forth section I.A.1.a. of the Policy, which states that GSIC

> will pay those sums that the insured becomes legally obligated to pay as damages because of '*bodily injury'* . . . *to which this insurance applies*. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply."

(Stip. ¶ 51; Policy 16, Ex. 4 to Stip.) (Emphasis added.) Section I.A.1.b. of the Policy states that "[t]his insurance applies to 'bodily injury' . . . only if" that bodily injury "takes place in the coverage territory." (Stip. ¶ 52; Policy 16, Ex. 4 to Stip.)

In addition to this "inclusive" language, the Policy also contains several exclusions and limitations. The first exclusion which is relevant to this case is contained in the "Exclusion – Designated Professional Services" document. This provision states that "[w]ith respect to any professional services shown in the Schedule . . . . [t]his Insurance does not apply to 'bodily injury' . . . due to the rendering of or failure to render any professional service." (Stip. ¶ 53; Policy 7, Ex. 4 to Stip.) The "Schedule" describes professional services as "AIRPORT/SKYDIVING AND RELATED SERVICES." *Id.*

A second limitation on coverage is contained in the "Limitation of Coverage to Designated Premises or Project" document. It provides that "[t]his insurance applies only to 'bodily injury' . . . and medical expenses arising out of . . . [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises. . . ." (Stip. ¶ 54; Policy 6, Ex. 4 to Stip.) The Schedule is blank, so the designated premises are those premises defined "in the Declarations as applicable to this endorsement." *Id.* The "Commercial General Liability Declarations" document defines the "premises" as "6 Albion Road, Lincoln, RI 02865" with a "Location Classification" of "BUILDINGS OR PREMISES–OFFICE–OTHER THAN – NOT FOR PROFIT." (Stip. ¶ 55; Policy 2, Ex. 4 to Stip.)

The "Additional Insured – Managers or Lessors of Premises" document, which adds RIAC to the Policy, provides that the "Designation of Premises (Part Leased to You)" is "6 Albion Road, Lincoln, RI 02865." (Stip. ¶ 56; Policy 5, Ex. 4 to Stip.) That

document also states that "Section II [of the Policy] is amended to include [RIAC] as an Insured . . . but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you . . . ." (Stip. ¶ 56; Policy 5, Ex. 4 to Stip.) The reference to "you" in the Policy refers to BSSI as the primary insured under the Policy. (Stip. ¶ 56.)

GSIC has declined to defend RIAC or to provide indemnity for any losses arising from the accident because (1) the Costa Action arose from "airport/skydiving and related services," and (2) the insured "premises" is limited only to the portable trailer/office from which BSSI conducted its operations, and the accident did not have a causal relationship with the trailer. (Denial of Coverage, Policy 15–20, Ex. 4 to Stip.)

**d. Procedural Posture.**

On or about July 6, 2007, RIAC brought the present action in the Rhode Island Superior Court for Providence County in order to obtain a declaration that GSIC is required to indemnify and defend RIAC. GSIC then caused this action to be removed to this Court. (Stip. ¶ 57.) GSIC has since agreed to provide a defense to certain parties (but not RIAC) under a reservation of rights pending the outcome of this declaratory judgment action. *Id.* ¶ 4. The parties have also stipulated that the substantive law of Rhode Island applies to this diversity action. *Id.* ¶ 59.

## STANDARD OF REVIEW

Summary judgment is appropriate whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. Rule 56(c). An adverse party "may not rest

upon the mere allegations or denials" of that party's pleading, but rather, "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).

A mere allegation of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *E.g., Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 15 (1st Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). An issue is genuine only if the materials set forth facts upon which "a reasonable jury could return a verdict for the nonmoving party." *See id.* (internal quotations omitted). Moreover, an issue is only material if it has the "potential to affect the outcome of the suit." *See id.* (internal quotations omitted).

## ARGUMENT

Summary judgment is appropriate in this case because the parties have stipulated to most of the relevant facts involve in this dispute. In fact, it appears that the only purported factual dispute in this action involves whether Ms. Costa touched down before or after being tackled and coming into contact with the rotating propeller. GSIC respectfully submits, however, that this is not a material fact which could preclude summary judgment in its favor. No matter how this factual issue is resolved, it cannot be disputed that Ms. Costa's injuries were caused by her parachute becoming tangled with an airplane propeller only moments after the landing/tackle, and that the injury did not occur within GSIC's office trailer. Either ground would be sufficient to find in favor of GSIC because the Policy does not apply to bodily injury due to airport/skydiving and related services, and because RIAC's coverage is limited to injuries arising from the ownership, maintenance, or use of the office trailer. Moreover, to the extent that RIAC

seeks a declaration with respect to coverage of BSSI in this action, RIAC lacks standing to assert such claims for relief. Therefore, this Court should grant Defendant's motion.

## I. MS. COSTA'S INJURY AROSE FROM AIRPORT/SKYDIVING AND RELATED SERVICES, SO THERE IS NEITHER A DUTY TO INDEMNIFY NOR TO DEFEND.

As set forth in detail below, the Policy issued by GSIC to BSSI excludes coverage for *bodily injury due to the rendering of or failure to render airport/skydiving and related services*. The undisputed facts of this case reveal that Ms. Costa suffered injury because, as an immediate consequence of her landing too close to a parked aircraft, her parachute became entangled with an airplane propeller. Therefore, this Court should defeat RIAC's attempt to obtain indemnification for an injury which is clearly excluded by the Policy terms. Moreover, because the allegations contained in the Costa Complaint are substantially the same as the undisputed facts before this Court, and describe injuries which are clearly due to airport/skydiving and related services, there is likewise no obligation to defend RIAC in the underlying Costa Action.

### A. There is no genuine issue of fact that Ms. Costa's injuries were due to *the rendering of or failure to render airport/skydiving and related services*, so there is no duty to indemnify RIAC.

The Policy requires GSIC to pay "those sums that the insured becomes obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (Stip. ¶ 51; Policy 16, Ex. 4 to Stip.) However, "with respect to any professional services . . . [t]his Insurance does not apply to 'bodily injury' . . . due to the rendering of or failure to render any professional service." (Stip. ¶ 53; Policy 7, Ex. 4 to Stip.) The Policy then describes "professional services" as "AIRPORT/SKYDIVING AND RELATED

SERVICES." *Id.* Therefore, the Policy does not apply to *bodily injury due to the rendering of or failure to render airport/skydiving and related services.*

In its complaint and other pleadings, RIAC has erroneously relied upon the following language contained in the Insurance Binder document, which was signed March 27, 2002: "NO COVERAGE INTENDED FOR ANY ACTUAL SKYDIVING OR RELATED OPERATIONS." However, this language was superseded by the complete Policy document which was transmitted to BSSI shortly afterwards, in April 2002. (Stip. ¶ 48.) Unlike the Insurance Binder, the actual policy term uses the word "airport" in its description of the policy exclusion. Nevertheless, under either formulation, Ms. Costa's injuries fall within the Policy exclusion because this was clearly a skydiving accident.

Rhode Island courts require only a low threshold of causation to invoke a policy exclusion. For example, in *American Commerce Ins. Co. v. Porto*, a Boy Scout leader was charged with acts of child molestation. 811 A.2d 1185 (R.I. 2002). The plaintiffs sought to recover from another Boy Scout leader, Mr. Porto, on the grounds that he had negligently hired and supervised the alleged molester. *Id.* at 1188–89. Mr. Porto was covered by a homeowner's insurance policy, but that policy excluded claims "arising out of the actual, alleged, or threatened sexual molestation of a person." *Id.* at 1188. Therefore, the question for the court was whether a claim for negligent hiring/supervision arose out of the sexual molestation of a person.

The insured argued that the claim asserted against him for bodily injury was not based upon acts of child molestation, but, rather, his alleged acts or omissions of negligent supervision. *Id.* at 1190. However, the Court disagreed and held that the

exclusion applied. The relevant test was "whether the injuries alleged by plaintiff have a causal connection with whatever type of conduct or situation that the policy has excluded from coverage." *Id.* at 1196. It was not necessary to determine whether either the acts of negligent supervision, or the acts of sexual molestation, were *proximate* causes of the alleged injury. *Id.* at 1194. As long as the claims had some causal connection with the excluded activity, they fell within the policy exclusion. *Id.* at 1196. "But for" the sexual molestation, the negligent supervision claim would not have occurred. *Id.* at 1195–96, 1201. Therefore, the claims fell within the policy exclusion.

As applied to this case, this low standard of causation compels the conclusion that Ms. Costa's injuries were *due to the rendering of airport/skydiving and related services*. RIAC suggests in its pleadings that the alleged injuries are not related to skydiving, as compared with the failure of a parachute to open, presumably because the Ms. Costa allegedly reached the ground. However, *Porto* sets a low bar for causation between the excluded activity and the claims for bodily injury. In this case, an injury to a skydiver, who was still wearing her parachute, and who was harmed only moments after landing by the propeller of the airplane that she had used for skydiving, is clearly due to "airport/skydiving and related services."

### B. There is no duty to defend because the allegations of the complaint describe an injury which falls within the exclusion for airport/skydiving related services.

Section I.A.1.a. of the Policy requires GSIC "to defend the insured against any 'suit'" seeking damages "because of 'bodily injury' . . . to which this insurance applies." (Stip. ¶ 51; Policy 16, Ex. 4.) However, GSIC has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not

apply." *Id.* Therefore, the key question is whether the Costa Action seeks damages for bodily injury to which the Policy applies. As set forth above, the Policy does not apply to *bodily injury due to the rendering of airport/skydiving and related services*.

Under Rhode Island law, an insurer's duty to defend "is ascertained by laying the tort complaint alongside the policy; if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured." *Employers' Fire Ins. Co. v. Beals*, 103 R.I. 623, 631, 240 A.2d 397, 402 (1968) (relying upon *Thomas v. American Universal Ins. Co.*, 80 R.I. 129, 93 A.2d 309 (1952)). This has been referred to as "the pleadings rule," or the "eight corners rule." *See id.*; *see also Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (referring to the "eight corners rule").

Whether or not an insurer is required to defend is a different question than whether or not the insured will eventually be required to indemnify. If the insurer is required to defend, it may not be required to indemnify, because the underlying allegations may turn out to be inaccurate or the claims may turn out to lack merit. *See Grenga v. National Sur. Corp.*, 113 R.I. 45, 46, 317 A.2d 433, (R.I. 1974) (stating that if "the allegations in the complaint fall within the risks covered against in the policy, the insurer is duty-bound to provide a defense for its insured regardless of whether the allegations are groundless, false, or fraudulent"). However, if the insurer is required to indemnify—i.e., the claim has merit and is covered by the policy—then it is likely that the insurer was also required to defend. Therefore, Rhode Island courts have said that "the duty to defend is broader than the duty to indemnify." *Mellow v. Medical Malpractice Joint Underwriting Ass'n of Rhode Island*, 567 A.2d 367, 368 (R.I. 1989).

In this case, the factual allegations contained in Ms. Costa's complaint are not dissimilar to the undisputed facts before this Court. The Costa Complaint's allegations also compel the conclusion that Ms. Costa seeks damages for *bodily injuries due to the rendering of airport/skydiving and related services* to which the Policy does not apply. (Costa Complaint ¶¶ 14–24, Ex. 4 to Stip.) The pertinent factual allegations of the complaint are as follows:

- "on September 29, 2002, Ms. Costa engaged in skydiving pursuant to her agreement with the BSSI defendants." *Id.* ¶ 17.
- "When the plane ascended to the appropriate height, Ms. Costa exited the plane and began her skydive." *Id.* ¶ 20.
- "Prior to Ms. Costa's landing, Defendant King landed the plane and taxied to the boarding site adjacent to the landing area." *Id.* ¶ 21.
- "At the termination of her skydive, Ms. Costa landed in the landing area." *Id.* ¶ 22.
- "At all times material to the incident described in this complaint, the plane's engines were running and the propellers were engaged and rotating." *Id.* ¶ 23.
- "Upon landing in the landing area, Ms. Costa's parachute canopy, and Ms. Costa, were drawn into the plane's rotating propellers" and she suffered injury "as a direct and proximate result." *Id.* ¶ 24.

Therefore, it is clear from these allegations that (1) Ms. Costa had just completed her skydiving descent; (2) she was still wearing her parachute; and (3) she was injured by a rotating airplane propeller. These are allegations of bodily injury due to the rendering of airport/skydiving and related services. Therefore, GSIC has no duty to defend RIAC in the Costa Action.

## II. MS. COSTA'S INJURY DID NOT ARISE FROM THE OWNERSHIP, MAINTENANCE, OR USE OF THE INSURED PREMISES, SO THERE IS NEITHER A DUTY TO INDEMNIFY NOR A DUTY TO DEFEND.

While the airport/skydiving exclusion should provide this Court with sufficient grounds to rule in GSIC's favor, there is an additional ground for denying coverage to RIAC in this case. The Policy language unambiguously limits coverage only to the

trailer/office used by BSSI in its skydiving business, and it undisputed that Ms. Costa's injury had no connection to that building. Therefore, there is no duty to indemnify. Similarly, since the complaint's allegations also describe injuries which have no causal connection to the trailer/office, there is no duty to defend RIAC in the Costa Action.

### A. There is no genuine issue of fact that Ms. Costa's injuries did not arise from the ownership, maintenance, or use of the insured premises.

The Policy requires GSIC to pay "those sums that the insured becomes obligated to pay as damages because of 'bodily injury' to which this insurance applies." (Stip. ¶ 51; Policy 16, Ex. 4 to Stip.) The Policy applies "only to 'bodily injury' . . . and medical expenses arising out of . . . [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises. . . ." (Stip. ¶ 54; Policy 6, Ex. 4 to Stip.) The Schedule is blank, so the designated premises are defined in a separate declarations page. (Stip. ¶ 54.) The applicable declarations page describes the premises by its address and the following description: "BUILDINGS OR PREMISES–OFFICE–OTHER THAN – NOT FOR PROFIT." (Stip. ¶ 55; Policy 2, Ex. 4 to Stip.)

If these were the only relevant documents, then the Policy would apply to *the ownership, maintenance, or use* of the buildings/office and *operations necessary or incidental to those premises*. However, one additional document is also relevant to the definition of the premises. As noted above, this policy was purchased by BSSI as a condition for utilizing the airport premises. RIAC was an "additional insured" named in the Policy. The document which adds RIAC to the Policy states that RIAC will be insured "but only with respect to liability arising out of the ownership, maintenance, and use of that part of the premises leased to [BSSI] . . . ." (Stip. ¶ 56; Policy 13, Ex. 4 to Stip.) Therefore, RIAC is an insured only with respect to *the ownership, maintenance, or*

*use of the premises*, but is not an insured with respect to *operations necessary or incidental* to those premises. While BSSI falls within the scope of the "necessary or incidental" language, RIAC is an additional insured for whom that language is inapplicable.

Because (1) the "premises" are defined by the Policy as the office/trailer; (2) Ms. Costa's injuries have no causal connection to the trailer; and (3) RIAC is not covered with respect to "operations necessary or incidental" to the premises, there is no genuine issue that Ms. Costa's claims against RIAC fall outside of the Policy coverage.

**B. Ms. Costa's injuries have no causal connection with the "premises."**

The following decision of the Rhode Island Supreme Court confirms that, because Ms. Costa's injury has no causal connection to the trailer, there is no coverage. In *Hingham Mutual Fire Insurance Co. v. Heroux*, 549 A.2d 265, 265 (R.I. 1988), a horse escaped from its stable and caused a motor vehicle accident. The stable was not located on an insured location. *Id.* However, the stable owners maintained homeowner's policy for their residence which was located elsewhere from the stable. *Id.* The policy's inclusive language clearly covered injuries caused by animals even when the injury occurs away from the insured location. *Id.* at 266. However, a separate policy exclusion provided that the policy would not apply to "bodily injury. . . arising out of any premises owned or rented to any insured which is not an insured location." *Id.*

The court interpreted this policy language to require that the injury must have a causal connection to the premises. *Id.* at 266–67. It determined that a horse was not within "the fair connotation" of "premises," and therefore, the accident was not causally connected to any premises. *Id.* at 266. Even if the horse had been present on an

uninsured location, the accident caused by the horse did not arise out of any "premises." *Id.* at 266. Therefore, the court found that the policy exclusion for injuries "arising out of any premises. . . " did not apply to the accident. *Id.*

Here, as in *Heroux*, the General Star policy also uses the "arising out of" language to define the scope of the policy limitation. (Stip. ¶¶ 54, 56; Policy 6, 13, Ex. 4 to Stip.) Since an airplane is not within a "fair connotation" of the word "premises," and is the primary cause of the injuries, Ms. Costa's injuries do not arise out of the insured "premises."

**C. There is no duty to defend because the allegations of the complaint describe an injury which did not arise from the ownership, maintenance, or use of the insured premises.**

As noted above, GSIC has a duty to defend RIAC if the plaintiffs seek damages for bodily injury to which the Policy applies, and the duty to defend is ascertained by analyzing the allegations of the underlying complaint. The Costa Complaint confirms that neither the office/trailer nor the boarding/landing areas had any causal connection with Ms. Costa's injuries. (Costa Complaint ¶¶ 14–24, Ex. 3.) Rather, it was the combination of an airplane and parachute which caused Ms. Costa's injuries, and these are excluded from the Policy coverage. Therefore, there is no duty to defend.

## III. THE COURT SHOULD DECLINE TO RULE ON WHETHER GSIC MUST INDEMNIFY AND DEFEND BSSI.

**a. RIAC lacks standing to assert any right of BSSI to coverage.**

RIAC seeks a declaration not only with respect to its own insurance coverage, but also seeks a declaration that GSIC is required to indemnify and defend BSSI as well. However, RIAC has no standing to assert any right of BSSI to coverage under the

Policy.[2] The basic requirement is that a plaintiff must have alleged "such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues upon which the court depends for an illumination of the questions presented." *Baker v. Carr*, 369 U.S. 186 (U.S. 1962). Therefore, an essential requirement of standing is that "the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (U.S. 1992) (citations omitted).

Standing doctrines seek to ensure, *inter alia*, that "the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191, (2000). RIAC has no stake in whether GSIC provides coverage to BSSI, a defunct corporation. As set forth above, the policy document which adds RIAC to BSSI's policy uses slightly different language than is applicable to BSSI, at least with respect to whether the policy applies to uses "necessary or incidental" to the insured premises. (Additional Insured, Policy 6, Ex. 4 to Stip.) The Court should not waste its time or resources in determining whether or not the different language would compel coverage of BSSI, where, as set forth above, it does not compel coverage for RIAC.

**b. The Declaratory Judgment Act permits the Court to decline to decide whether BSSI is entitled to coverage.**

Under the Declaratory Judgment Act, the Court retains substantial discretion to decline to render a declaratory ruling. *See* 28 U.S.C. § 2201 (stating that the court "may

[2] BSSI is no longer an entity recognized under Rhode Island law. Its certificate of incorporation was revoked on October 22, 2001. Since more than five years has elapsed, BSSI no longer has authority to transact business in Rhode Island. G.L 1956 § 7-1.2-1325.

declare the rights and other legal relations. . . .”); *Ernst & Young v. Depositors Economic Protection Corp.* 45 F.3d 530, 534 (1st Cir. 1995) (stating that the Declaratory Judgments Act provides “a window of opportunity, not a guarantee of access,” and that “the courts, not the litigants, ultimately must determine when declaratory judgments are appropriate and when they are not. Consequently, federal courts retain substantial discretion in deciding whether to grant declaratory relief”). In this case, the real party in interest as to non-party BSSI’s coverage is BSSI, and not RIAC. Accordingly, the Court should decline to rule on whether BSSI is entitled to insurance coverage.

**CONCLUSION**

For the reasons stated herein, Defendant respectfully requests that its motion be granted and that this Court enter a judgment in its favor declaring that it has no obligation to defend RIAC in the underlying action, *Suzanne Marie Costa, et al. v. Daniel King, et al.*, C.A. No. 05-0140 (R.I. Super., filed Jan. 10, 2005), that it has no obligation to indemnify RIAC for any damages awarded in that action, and denying all other relief requested by RIAC. Defendant also requests that it be awarded its costs in this action and any other relief that this Court deems appropriate.

DEFENDANT,
GENERAL STAR INDEMNITY COMPANY
By Its Attorneys,

/s/ Dennis E. Carley
Dennis E. Carley (#3218)
Roberts, Carroll, Feldstein & Peirce, Inc.
Ten Weybosset Street
Providence, RI 02903
(401) 521-7000 FAX (401) 521-1328
decarley@rcfp.com

/s/ Daniel E. Burgoyne
Daniel E. Burgoyne (#7541)
Roberts, Carroll, Feldstein & Peirce, Inc.
Ten Weybosset Street
Providence, RI 02903
(401) 521-7000 FAX (401) 521-1328
dburgoyne@rcfp.com

**CERTIFICATION**

The undersigned hereby certifies that a true copy of the within document was filed electronically with the Court, and notices of electronic filing were sent to the following counsel of record on **August 5, 2008**.

Lori Caron Silveira, Esq.
Adler Pollock & Sheehan
One Citizens Plaza, 8th Fl.
Providence, RI 02903-1345
lsilveira@apslaw.com

David N. Zeehandelaar
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
zeehandelaar@blankrome.com

and via First Class Mail to:

Lev Kalman, Esq.
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998

/s/ Daniel E. Burgoyne