# EXHIBIT A

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
PROVIDENCE, SC. SUPERIOR COURT

SUZANNE MARIE COSTA, CARLOS COSTA, and MATTHEW COSTA, by and through Suzanne Marie Costa and Carlos Costa as Guardians

VS. C.A. NO. 05-0140

DANIEL KING, BLUE SKIES SKYDIVING, INC. d/b/a Boston-Providence Skydiving Center, ROBERT J. SPENCER, RHODE ISLAND AIRPORT CORPORATION, INC., HAWTHORNE AVIATION - RHODE ISLAND, INC., PIEDMONT HAWTHORNE AVIATION, INC., KEVIN McCOLE, and JOHN DOES

DEPOSITION of DAVID ALAN CLOUTIER, a witness in the above-entitled cause, taken on behalf of the Plaintiffs, before Lori L. Spremulli, Notary Public, R.P.R., in and for the State of Rhode Island, at T.F. Green Airport, Rhode Island Airport Corporation, 2000 Airport Road, Warwick, Rhode Island, scheduled on Wednesday, January 9, 2008, at 11:00 A.M.

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, RI 02920
(401) 946-5500

A. Not that I recall.
Q. Did Aeronautics come back with any recommendation for the board in connection with the skydiving activities?
A. I believe they recommended that the operation was perfectly allowable to continue.
Q. Do you know if the Aeronautics division issued any written report or recommendations to the board?
A. I believe they did issue a report to the board, I don't specifically recall what was contained in it.
Q. But it is your memory that the reported recommendations indicated that the skydiving operation was completely allowable, to use your word?
A. Correct.
(PLAINTIFFS' EXHIBIT 2 MARKED FOR I.D.)
MR. ZEEHANDELAAR: He has seen this before.
Q. It has been acknowledged that the witness has seen what has now been marked as Exhibit 2 for identification, and just for the sake of formality, can you tell us what it is, Mr. Cloutier?
A. It is a letter of authorization on Hawthorne Aviation letterhead.
Q. And Hawthorne was acting in 1999 and during its management of the airport as RIAC's manager of that facility; right?



A. Correct.
Q. And others?
A. Correct.
Q. And, indeed, Hawthorne had the authority to make decisions regarding tenancies and activities at the airport; true?
A. Correct.
Q. In the first paragraph, it is indicated that effective April 1, 1999, Blue Skies would have authorization to conduct business at North Central State Airport and agree to comply with certain terms and conditions; true?
A. Correct.
Q. And in connection with that agreement, Blue Skies was going to pay $250 as a monthly fee for the opportunity to conduct those operations?
A. Correct.
Q. And you would agree that is a commercial transaction of some sort; right?
A. Right.
Q. And would you agree that if Hawthorne had the right to authorize those activities, it also had the right to deny authorization for the activities?
A. This lease was for a parcel of land, specifically, and yes, if the land was not appropriate for the use



intended, the authorization would not have been granted.
Q. But the document on its face does indicate that Blue Skies would have authorization to conduct business at North Central; true?
A. Yes.
Q. That it had nonexclusive use of the airport for the purpose of conducting skydiving operations and training; true?
A. True.
Q. So if Hawthorne Aviation had the right to authorize the use of the land for those activities, Hawthorne had a corresponding right to deny authorization; true?
A. Sure.
Q. And that always remained the case?
A. Correct.
Q. And at Page 3 of that document, your signature appears; does it not?
A. Yes, it does.
Q. And there are attachments to that document; is that right?
A. Yes.
Q. And there were attachments to the document at the time you signed it; true?
A. Yes, sir.



Q. And the first attachment is on RIAC stationery or letterhead?
A. Correct.
Q. And for the purposes of our discussion, it's Bates stamped RIAC 0106; right?
A. Right.
Q. And it is a letter addressed to Mr. Spencer, it is a three-page letter signed by Mr. Spencer and Mr. Drozdz?
A. Correct.
Q. And it is basically an agreement that sets out the parameters of the do's and don't's as it were for Blue Skies?
A. Correct.
Q. Is that fair to say?
A. Yes.
Q. Paragraph 5 provides that the ground crew shall make advisories broadcasts of jumpers' positions on a certain frequency to enhance aircraft and jumper safety; do you see that?
A. Yes, I do.
Q. Now, the ground crew being referenced there is whom?
A. That would have been the skydiving operators' ground crew.
Q. And the broadcast would be made on what piece of equipment?